## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| E. SCOTT FRISON, JR., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-04-350 |
| RYAN HOMES, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

This action involves a suit brought by E. Scott Frison, Jr. ("Mr. Frison") and Lisa Ann Frison ("Mrs. Frison") (collectively, "Plaintiffs") against Ryan Homes, NVR Inc. ("NVR"), and KBM Financial Group, LLC ("KBM") (collectively, "Defendants"), for various federal and state law claims related to Plaintiffs' attempts to purchase a home from NVR. Currently pending before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment [7],[1] KBM's Motion to Dismiss Pursuant to Rule 12(b)(5) [12], Plaintiffs' Motion for Summary Judgment [13], and NVR's Motion for Sanctions [19]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. The Court heard from all parties in this action at a hearing on October 27, 2004. For the reasons stated below, the Court will GRANT *in part* Defendants' Motion for Summary Judgment, as to the federal law claims brought under RICO and the FHA, and, *sua sponte*, DISMISS the case for lack of federal jurisdiction.

---

[1]Although the Motion to Dismiss or for Summary Judgment was originally brought on behalf of NVR alone, at the October 27, 2004 hearing, KBM indicated that it joins in this motion.

1

I.      **Factual & Procedural Background**

This case involves a contract for the sale to Plaintiffs of a house to be constructed by Defendant NVR, trading as Ryan Homes. On May 10, 2003, Plaintiffs entered into a purchase agreement with NVR for the construction and sale of a custom home located in Bowie, Maryland ("Property"). The purchase price of the Property was $448,625.00. Plaintiffs made an initial deposit of 5% of the purchase price, or $22,431.00, and agreed to pay the remaining balance at settlement. The purchase agreement ("Agreement") required Plaintiffs to apply for financing for the remaining balance within seven days of execution. The Agreement provided that, if Plaintiffs were unable to obtain a mortgage loan from a lender within 45 days from the execution of the Agreement, NVR could choose to either (1) terminate the agreement, or (2) extend the financing contingency for additional 30 day periods. NVR referred Plaintiffs to KBM as a potential source to provide financing for the purchase of the new home.

Plaintiffs applied for mortgage financing thorough KBM. Plaintiffs concede that their respective credit histories were less than perfect. However, despite these problems, KBM offered a financing package to Plaintiffs. Plaintiffs rejected this financing package. On December 15, 2003, Plaintiffs notified NVR and KBM that they intended to obtain financing through another source.

NVR completed construction of the Property in November 2003. A settlement date was set for November 11, 2003. As of that date, Plaintiffs had not yet obtained financing and, consequently, the settlement did not occur. NVR agreed to extend the settlement date by 30 days. By December 20, 2003, Plaintiffs still had neither obtained financing nor settled on the Property. On January 28, 2004, and January 29, 2004, Mr. Frison sent two letters to NVR, explaining that he had obtained a loan for 90% of the mortgage. On February 3, 2004, NVR notified Plaintiffs in writing that it was canceling the Agreement.

On February 9, 2004, Plaintiffs brought this action pursuant to this Court's federal question jurisdiction under 18 U.S.C. § 1331. Plaintiff alleges two federal causes of action pursuant to the RICO statute and three causes of action pursuant to the Fair Housing Act. On March 15, 2004, Defendants filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment. The Court now rules on those motions.

## II.   STANDARD

### 1.   Motion to Dismiss

It is well-established that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

### 2.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md. 1998). "Summary judgment procedure is properly

regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (quoting Fed.R.Civ.Pro. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 2435 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.   ANALYSIS

#### 1.   Defendants' Motion to Dismiss /Cross Motions for Summary Judgment [7] [13]

Defendants bring a Motion to Dismiss Plaintiffs' Amended Complaint, or in the alternative, a Motion for Summary Judgment. Plaintiffs bring a cross Motion for Summary Judgment, asking the Court to find that, as a matter of law, they are entitled to relief. For the following reasons, this Court finds that summary judgment is appropriate as to the federal causes of action and will Grant Defendants' Motion for Summary Judgment as to Counts I, II, XII, XIII, and XIV of the Amended Complaint.

As an initial matter, the Court notes that Plaintiffs cannot maintain this cause of action against Ryan Homes, as the record indicates that Ryan Homes is not a separate legal entity but rather merely a trade name under which NVR does business. Trade names are not jural persons and cannot sue or be sued. *In re Midwest Athletic Club*, 161 F.2d 1005, 1010 (7th Cir. 1947). As such, Plaintiffs' claims against Ryan Homes are not proper and will not survive.

### A.  RICO - Counts I and II

Counts I and II of the Amended Complaint charge NVR and KBM with racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq* (2004). In order to allege a RICO violation, Plaintiffs must allege (1) the existence of an enterprise, (2) a pattern of racketeering activity, (3) predicate acts of mail or wire fraud, and (4) justifiable reliance on the part of Plaintiffs.  18 U.S.C. § 1961(a), (d).

Under the RICO statute, an "enterprise" is either (1) a legal association, or (2) an association-in-fact.  19 U.S.C. § 1961(4).  Plaintiffs have attempted to allege two association-in-fact enterprises: one association between Ryan Homes and NVR and a second association between NVR and KBM.  As the Court has already noted, Ryan Homes and NVR are not distinct entities, as Ryan Homes is merely a trade name under which NVR does business.  Therefore, the only possible association-in-fact under RICO is an association between NVR and KBM.

To adequately allege the existence of an association-in-fact enterprise, Plaintiffs must allege "evidence of an ongoing organization, formal or informal, which functions as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  In determining whether a plaintiff has properly pled an association-in-fact enterprise, a court must look to the allegations of "hierarchy, organization, and activities of the association."  *Manhattan Telecomm. Corp., Inc. v. Dialamerica Mktg., Inc.*, 156 F.Supp.2d 376, 380 (S.D.N.Y. 2001).  Specifically, a complaint must allege "an ascertainable structure distinct from the pattern of racketeering activities."  *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1079 (D.Md. 1991).  Additionally, a complaint "must plead specific facts, not mere conclusory allegations, which establish the enterprise."  *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

Plaintiffs have failed to demonstrate that NVR and KBM were engaged in an association-in-fact enterprise sufficient to satisfy the definition of "enterprise" under RICO. The Amended Complaint merely makes the conclusory assertion that NVR and KBM were engaged in an association-in-fact; it fails to detail the organization, structure, continuity, or common purpose of the alleged enterprise. Moreover, the Amended Complaint only addresses the instant claim and does not make any attempt to detail "an ascertainable structure distinct from the pattern of racketeering activities." As such, Plaintiffs have failed to state a claim under the RICO statute.

RICO creates civil liability for persons who engage in "a pattern of racketeering activity." 18 U.S.C. §§ 1962, 1964. A "pattern of racketeering activity" requires at least two predicate acts that "are related or that constitute or pose a threat of continued criminal activity." *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). The Fourth Circuit has instructed district courts to consider several factors in determining whether the racketeering activity will likely continue, including the number and variety of predicate acts, the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential of multiple distinct injuries. *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988); *see Park v. Jack's Food Sys., Inc.*, 907 F.Supp. 914, 920 (D.Md. 1995).

Here, the Amended Complaint alleges only that NVR conspired with KBM to defraud Plaintiffs out of the Property. The scheme is alleged to have lasted from May 2003 until February 2004. Plaintiffs have identified only themselves as victims of the alleged scheme. Plaintiffs have alleged only conclusory and limited use of mail and wire services. As such, Plaintiffs have not alleged a widespread fraud that threatens future criminal activity. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (granting

6

motion to dismiss RICO claim where defendants' action were narrowly directed to single fraudulent goal).

A RICO claim alleging mail and wire fraud "must do so with particularity or else be dismissed." *Mylan*, 770 F.Supp. at 1076. The requirement of "particularity" does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists. *Id.* Here, Plaintiffs fail to plead the acts of mail and wire fraud with requisite particularity; the Amended Complaint fails to allege the time, place, and contents of the mail and wire communications, and fails to identify the person or persons who made use of the mail or wire facilities. Plaintiffs' allegations are therefore insufficient to state a RICO claim.

Additionally, the Fourth Circuit has held that, where a plaintiff alleges predicate acts of mail and wire fraud as a proximate cause of the plaintiff's injury, the plaintiff must also allege that he "justifiable relied to his detriment on the defendant's material misrepresentation." *Chisolm v. Transouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996). Plaintiffs' Amended Complaint contains no such allegation, and therefore fails to state a claim under RICO.

For all of these reasons, the Court finds that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law with respect to Plaintiffs' claims under the RICO statute. As such, this Court will dismiss Counts I and II of the Amended Complaint.

### B.   Fair Housing Act - Counts XII, XIII, and XIV

Plaintiffs bring one count of Discrimination in the Sale of Property pursuant to 42 U.S.C. § 3604(a) (2003), and two counts of Discrimination in the Financing of Property Purchase, pursuant to 42 U.S.C. § 3605(a) (2003). Federal fair housing law prohibits the use of impermissible criteria, such as race, color,

or familial status, in real estate transactions. § 3604(a). A Fair Housing Act ("FHA") claim is analyzed under the three-part *McDonnell Douglas* test, traditionally used in the employment discrimination context.

Plaintiffs bring Count XII under 42 U.S.C. § 3604(a), which makes it unlawful "[t]o refuse to sell or rent ... or otherwise make unavailable or deny, a dwelling to any person" because of their race, sex, or familial status. Plaintiffs bring Counts XIII and XIV under 42 U.S.C. § 3605(a), which makes it unlawful for a mortgage lender to "discriminate against any person [in the making of a loan secured by residential real estate], or in the terms or conditions of such a transaction," because of race, color, or familial status.

In order to state a *prima facie* case of housing discrimination under 42 U.S.C. § 3604(a), a plaintiff must allege that (1) the plaintiff was a member of a racial minority, (2) the plaintiff applied for and was qualified for, or otherwise ready, willing, and able to buy the property on the seller's terms, (3) the seller refused to sell the property to the plaintiff, and (4) the property remained available for sale on terms similar to what the plaintiff offered. *Mobley v. Rosselle*, 297 F.Supp.2d 835, 838 (D.Md. 2003). Similarly, in order to state a *prima facie* case of loan application discrimination under 42 U.S.C. § 3605, a plaintiff must allege that (1) the plaintiff is a member of a protected class, (2) the plaintiff applied for and was qualified for a loan, (3) the loan was rejected despite the plaintiff's qualifications, and (4) the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff. *Latimore v. Citibank, F.S.B.*, 979 F.Supp. 662, 665 (N.D.Ill. 1997).

Mr. Frison is a minority and thus a member of a protected class. However, Plaintiffs have failed to show that Mr. Frison was qualified for, or otherwise ready, willing, and able to buy the Property. The Amended Complaint states that, at the time of closing, Plaintiffs had obtained a loan of only $418,528.00.

Plaintiffs concede that this balance fell $46,000.00 short of what was owed at the time of closing. Additionally, the letters sent by Mr. Frison on January 28, 2004 and January 29, 2004, clearly state that he had obtained a loan for only 90% of the mortgage. As such, Plaintiffs were not qualified for, or otherwise ready, willing, and able to buy the Property on the seller's terms.

Plaintiffs have also failed to demonstrate that they were qualified to obtain a loan from either NVR or KBM. In *Hickson*, a case involving claims under Section 3605(a), a court granted a motion to dismiss because plaintiff failed to allege that he was qualified to obtain a loan from defendant. *Hickson v. Home Fed. of Atlanta*, 805 F.Supp. 1567, 1572 (N.D.Ga. 1992). The *Hickson* court emphasized that "[n]owhere ... does [plaintiff] plead that he met whatever qualifications may exist for making such an exchange, or that [defendant] engages in such exchanges with any other parties, let alone parties with qualifications similar to his." *Id.* at 1571-72. Similarly, Mr. Frison here fails to show that he was qualified for a loan or that Defendants provided loans to others possessing his qualifications. Plaintiffs seem to blame NVR and KBM for Mr. Frison's low credit score and his problems in obtaining a loan, but such accusations are irrelevant to the FHA inquiry. Additionally, the Court notes that Plaintiffs' evidence concerning any racial discrimination is completely lacking. Plaintiff has offered the Court nothing on the race discrimination issue beyond Mr. Frison's bare speculation.

For all of these reasons, the Court finds that Plaintiffs have failed to bring a *prima facie* case under the Fair Housing Act. As such, the Court will dismiss Counts XII, XIII, and XIV of the Amended Complaint.

    **2.**    **Federal Jurisdiction**

Jurisdiction in the federal courts is predicated upon either a federal question or diversity of

citizenship. 28 U.S.C. §§ 1331, 1332. This Court has an obligation to raise the issue of subject matter jurisdiction *sua sponte* if it appears at any time that further exercise of the Court's jurisdiction may be improper. *Soper v. Kahn*, 568 F.Supp. 398, 400 (D.Md. 1983).

Plaintiffs' Amended Complaint pleads jurisdiction based on a federal question. However, this Court has now dismissed all federal causes of action contained in the Amended Complaint. As such, federal question jurisdiction under 28 U.S.C. § 1331 is no longer applicable. Moreover, the Court does not have diversity jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, as both Plaintiffs and KBM are citizens of the state of Maryland. *See Krier-Hawthorne v. Beam*, 728 F.2d 658, 662-63 (4th Cir. 1984) ("There is a long-standing requirement that there be complete diversity of citizenship between all of the plaintiffs and all of the defendants in a diversity case.").

In sum, the Court finds, *sua sponte*, that it lacks subject matter jurisdiction and declines to exercise supplemental jurisdiction in this case. Therefore, the remainder of this action is dismissed for lack of jurisdiction. Accordingly, the Court need not address Defendants' Motion to Dismiss or for Summary Judgment insofar as it relates to Plaintiffs' Maryland state law claims.

Additionally, for the reasons stated above, the Court finds that Plaintiffs' Motion for Summary Judgment is without merit. Therefore, the Court will deny Plaintiffs' Motion for Summary Judgment.

### 3. KBM's Motion to Dismiss Pursuant to Rule 12(b)(5) [12]

KBM argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(5), as Plaintiffs have failed to properly serve KBM. Based on the record, the Court finds that Plaintiffs attempted to serve KBM at the incorrect address, and ultimately served Mary C. Crenson, who was not authorized to receive service on behalf of KBM. Plaintiffs therefore have not executed proper service on KBM.

Accordingly, Plaintiff's claims against KBM are dismissed for lack of service of process.

### 4.   NVR's Motion for Sanctions [19]

Defendant NVR moves this Court to impose sanctions on Plaintiffs pursuant to 28 U.S.C. § 1927, Fed. R. Civ. Pro. 11(b), and the Court's inherent powers to sanction bad faith litigants. NVR argues that both Plaintiffs' Complaint and Plaintiffs' Amended Complaint were filed in bad faith and without any factual or legal basis. NVR asks the Court to award NVR the reasonable attorneys' fees and litigation expenses which NVR has incurred in defending this suit, as well as any other sanctions the Court deems appropriate. The Court agrees with NVR, and will grant NVR's Motion for Sanctions.

The Court begins its analysis by considering 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The standard for determining Section 1927 violations is wholly objective, and does not require a finding of bad faith. *Harris v. Marsh*, 769 F.Supp. 1204, 1380 (E.D.N.C. 1988).

Rule 11 imposes an obligation on an attorney or *pro se* litigant signing pleadings to make a reasonable inquiry into the factual and legal support for the allegations, and prohibits the filing of pleadings for an improper purpose, such as harassment, delay, or coercion. Fed.R.Civ.Pro. 11; *see Cooter & Gell v. Harmar Corp.*, 496 U.S. 384, 393 (1990). For a complaint to be reasonable, the attorney or *pro se* litigant must have uncovered "some information to support the allegations in the complaint." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). Where there is *no* factual basis for plaintiff's allegations, the complaint violates Rule 11. *Id.*

In determining whether a Rule 11 violation has occurred, a court should assess: (1) whether there was a factual and legal basis to support the filing of the pleading, and (2) whether the pleading was filed for an improper purpose. *See In re Kunstler*, 9114 F.2d 505, 513 (4th Cir. 1990). The inquiry is an objective one, focusing on whether a reasonable attorney in like circumstances could believe that his actions were factually and legally justified. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). As such, the actual good faith of the attorney filing the pleading is irrelevant. *Id.*

Finally, the federal courts possess an inherent power to sanction bad faith litigants. *Roadway Express v. Piper*, 447 U.S. 752 (1980) (bad faith litigation exception extends to actions that led to lawsuit as well as conduct of litigation). In *White v. Office of the Public Defender*, the court explained that the authority of a district court to impose sanctions for bad faith litigation "is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 170 F.R.D. 138, 149 (D.Md. 1997). Stated differently, courts should use their inherent power to sanction in order to punish bad faith litigation and deter future abusive litigation. *Harris v. Marsh*, 679 F.Supp. 1204, 1375 (E.D.N.C. 1987).

Here, NVR first argues that Plaintiffs are vexatious litigants who warrant the imposition of a sanction; NVR points out that Mr. Frison, who is a D.C. licensed attorney admitted to practice in this Court, but not in the Maryland state courts, has filed nine *pro se* suits in the Maryland District Courts since 1991, and at least four *pro se* suits in the Maryland State Courts since 1999. NVR argues that, as a result of this Court's rejection of similar claims by Mr. Frison in other cases,[2] Mr. Frison should have been put

---

[2]NVR cites to *Ellis S. Frison, Jr. v. Stephen B. Wood*, (AW-98-2359), and *E. Scott Frison, Jr. v. Koger Management Group, Inc.*, (AW-98-1594), cases filed by Mr. Frison and heard by this Court, as examples of Plaintiffs' bad faith litigation. In both of those cases, this Court dismissed

12

on notice that the current action was devoid of any legal authority and stood no chance of success, and as such, sanctions are appropriate. *Whitney v. Bausch & Lomb Inc.*, 1998 WL 317567, *3 (W.D.N.Y. 1998) (requiring serial litigant to obtain express permission of Court before filing another action); *In re Tyler*, 839 F.2d 1290 (8th Cir. 1900) (sanctioning *pro se* litigant) (cited with approval in *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951, 959 (4th Cir. 1995).

Second, NVR argues that Plaintiffs knew at the time they filed their Amended Complaint that it was devoid of any legal or factual basis. On January 28, 2004, Mr. Frison sent a letter to NVR informing NVR that he had obtained a 90% mortgage commitment from Wells Fargo. NVR alleges that Mr. Frison contradicts this evidence in the Amended Complaint, where he falsely states that he had a 100% mortgage commitment as of this date. NVR further states that, when NVR canceled the Agreement, Plaintiffs threatened to, and in fact did, file this frivolous lawsuit.

Finally, NVR argues that Plaintiffs completely failed to investigate the instant claims. Specifically with regard to their RICO and FHA allegations, NVR argues that Plaintiffs have offered absolutely no factual basis to demonstrate that NVR's actions violated either one of these statutes. This Court agrees with NVR

In *Davis v. Hudgins*, a district court considered a similar case involving Rule 11 Sanctions. 896 F.Supp. 561 (E.D.Va. 1995). In that case, the Court held that Rule 11 sanctions were appropriate as applied against the *pro se* plaintiff who was also an attorney where the plaintiff presented no factual basis in support of his RICO and civil rights claims. *Id.* at 573.

Here, Plaintiffs, and Mr. Frison in particular, possess all of the trappings of being serial litigants who

---

Plaintiffs' allegations as either failing to state a claim or on summary judgment.

constantly, and often needlessly, occupy the time of this Court; it appears that nearly all of the lawsuits filed by Plaintiffs in this Court have lacked real merit. Although Mr. Frison is a *pro se* litigant, he is also an attorney, and therefore should be held to a higher standard than most *pro se* litigants. Moreover, it appears that Plaintiffs have not been completely candid with the Court concerning whether they had obtained a 100% mortgage at the time of closing. Plaintiffs' current position that they were able to obtain full financing at the time of closing stands in direct contradiction to letters written by Mr. Frison to NVR, in which Mr. Frison clearly states that he had only been able to obtain a 90% mortgage. The Court also finds that sanctioning Plaintiffs would not only provide a general deterrent to frivolous lawsuits, it would provide a specific deterrent to Mr. Frison, who has thrice appeared before this Court in suits lacking any factual or legal basis. Plaintiffs' complaints with Defendants, as meritless as they appear to be, are grounded in state law causes of action. Mr. Frison is not admitted to practice in the Maryland state courts and should not be looking to RICO and FHA statutes as jurisdictional hooks to adjudicate state claims in federal court. Plaintiffs' actions have compelled Defendants to defend against what the Court views as a baseless federal action. For all of these reasons, this Court finds that sanctions are appropriate in this case.

When a court decides to issue sanctions, it should consider the following factors in determining the appropriate sanction: (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum sanction needed to deter future frivolous filings; (3) the party's ability to pay; and (4) the severity of the party's Rule 11 violation. *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990). To this end, the Court orders Defendants to submit evidence of their reasonable fees and costs associated with this lawsuit, and will consider the appropriate sanction in light of these fees, as well as briefings from the parties concerning the reasonableness of the fees.

**IV.     CONCLUSION**

For the aforementioned reasons, this Court finds that there are no genuine disputes as to the material facts concerning the federal causes of action and that Defendants are entitled to summary judgment as to these claims. Therefore, this Court will GRANT *in part* Defendants' Motion for Summary Judgment as to Counts I, II, XII, XIII, and XIV of the Amended Complaint, DENY Plaintiffs' cross Motion for Summary Judgment, and GRANT KBM's Motion to Dismiss. Lacking a federal cause of action or diversity jurisdiction, the Court will, *sua sponte*, dismiss this case for lack of jurisdiction. Additionally, the Court finds that sanctions are appropriate in this case and will GRANT NVR's Motion for Sanctions. An Order consistent with this Opinion will follow.

| | |
|---|---|
| October 29, 2004 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |